DECISION AND JUDGMENT ENTRY
{¶ 1} Sherry Lewis ("Mother"), appeals the Athens County Court of Common Pleas, Juvenile Division, adjudication granting permanent custody of her daughter, Katelyn Lewis, to Athens County Children Services ("ACCS"). Mother cont argues that the trial court's judgment is against the manifest weight of the evidence. Specifically, Mother contends and that the trial court erred in finding ACCS made reasonable efforts to prevent Katelyn's removal from her home and to make it possible for her to return safely home. Because the record contains some competent, credible evidence supporting the trial court's finding that ACCS made reasonable efforts to prevent Katelyn's removal from Mother's home, we disagree. Mother also contends that the trial court erred in finding there was clear and convincing evidence that Katelyn was neglected and dependent. Again, because the record contains some competent, credible evidence supporting the trial court's conclusion that Katelyn is neglected and dependent, we disagree. Finally, Mother contends that the trial court erred in making specific findings of fact in support of its conclusion that Katelyn cannot be placed with either parent within a reasonable time or should not be placed with either parent. Because we find the record contains some competent, credible evidence to support the trial court's conclusion that one or more of the factors enumerated in R.C. 2151.414(E) exist as to Mother, we disagree. Accordingly, we overrule each of Mother's assignments of error and we affirm the judgment of the trial court.
 I. {¶ 2} Katelyn Lewis was born on May 4, 1992 to Sherry Lewis and Irvin Beougher ("Father"). The Athens County Juvenile Court first found Katelyn and her siblings neglected and mother has failed to prevent neglect of an emotional and medical nature."
 {¶ 3} The trial court also found that, pursuant to R.C. 2151.419, ACCS had made reasonable efforts to prevent the removal of Katelyn from her home, to eliminate the continued removal of Katelyn from her home, and to make it possible for Katelyn to return safely to her home. The court specifically noted ACCS's scheduling and coordinating medical and psychological appointments, educational opportunities, and homemaking services. The trial court concluded that an award of permanent custody to ACCS was in Katelyn's best interest, and accordingly terminated the parental rights of Mother and Father.
 {¶ 4} Mother timely appealed, citing the following assignments of error: 1) The trial court erred in finding that Athens County Children Services made reasonable efforts prevent (sic) or eliminate the need for removal or to eliminate the continued removal of the child from her dependent children in 1999, in Case No. 99300027. Mother voluntarily gave permanent custody of three of Katelyn's siblings to ACCS. One other sibling remains in a planned permanent living arrangement. As a result of that neglect and dependency finding, Katelyn remained in the temporary custody of ACCS from November 1999 until May 13, 2002, the court returned custody to Mother. Upon Katelyn's reunification with her Mother, ACCS obtained a protective supervision order and continued to monitor Katelyn's well being both at home and at school.
 {¶ 5} Katelyn remained in Mother's custody until October 9, 2002, when ACCS filed an ex parte motion for an emergency custody order and removed Katelyn from Mother's home. The next day, ACCS filed a complaint alleging that Katelyn was a neglected and dependent child, and seeking permanent custody of Katelyn pursuant to O.R.C. 2151.353(4). The complaint alleged, inter alia, that Katelyn's behavior at school had deteriorated, she was not getting enough sleep, she was not getting proper nutrition, she was attending school tired, dirty, smelly, and wearing the same clothes all week. ACCS noted that Mother's home was filthy, smelly, extremely cluttered and unsanitary. Further, ACCS noted that Katelyn might not be getting her medication as prescribed, and that she had not seen her counselor since May 2002. Shortly after ACCS filed its complaint, it filed, and the trial court approved, a motion to consolidate this matter with the 1999 case.[1]
 {¶ 6} The trial court conducted the adjudication hearing on November 27, December 3 and 4, 2002, and January 13, 2003. During that hearing, the court heard testimony from Katelyn's ACCS caseworkers, Tri-County Mental Health and Counseling, Inc. case manager, guardian ad litem, foster mother, Mother, Father, aunt, daycare providers, teacher, principal, and several teachers aides who work in Katelyn's classroom. The parties do not dispute that Katelyn's Father abandoned her. The hearing testimony revealed that Katelyn is an eleven year old girl who has had serious medical problems in the past, including a congenital heart defect and a stroke. She currently suffers from Asthma.
 {¶ 7} In addition to Katelyn's medical problems, she suffers from bi-polar disorder and post-traumatic stress disorder. As a result of these psychological challenges, Katelyn requires a great deal of one-on-one attention from the adults in her life. She is prone to fits of rage that may be triggered by seemingly insignificant aggravations of daily life. During these rages, Katelyn frequently kicks, screams, cusses, throws things, including chairs and desks, knocks things over, slaps, and bites. The testimony revealed that Katelyn's rages are often directed at adults, including, but not limited to, her teacher, other school officials, and her foster mother. When Katelyn goes into these rages it often takes two or more adults to physically restrain her until she calms down. Testimony revealed that a structured environment and rigid schedule are necessary to prevent and/or lessen the severity of Katelyn's rages.
 {¶ 8} Upon the completion of the four-day adjudication hearing, the trial court rendered a decision and judgment, including findings of fact and conclusions of law. Based upon the testimony presented in the adjudication hearing, the trial court found that Katelyn was a neglected and dependent child. Accordingly, the trial court held a disposition hearing on February 26, 2003.
 {¶ 9} At the disposition hearing, the trial court took judicial notice of the prior proceedings in this matter, and heard testimony from Katelyn's ACCS caseworkers and her guardian ad litem, focusing upon Katelyn's best interests. At the commencement of the disposition hearing, the court and counsel for all parties discussed ACCS's previous motion, wherein it requested that the trial court conduct an in camera interview with Katelyn. At that time, all counsel agreed to stipulate the contents of that interview into evidence. The trial court conducted the in camera interview on March 3, 2003.
 {¶ 10} On March 13, 2003, the trial court rendered a decision and judgment entry, wherein, it found by clear and convincing evidence that Katelyn could not be placed with either parent within a reasonable time and should not be placed with either parent. The trial court found that Katelyn was clearly neglected as defined by R.C. 2151.03, as her "medical, psychological, emotional, and educational needs have not been met by her biological mother." Additionally, the court noted "her mother has demonstrated a lack of commitment or unwillingness to provide an adequate home for her. Her father abandoned her, and the evidence shows that her mother has improperly or inadequately provided reasonable food and nutrition to her. As a result, her home and to make it possible for her to return safely to the home; 2) the trial court erred in finding there was clear and convincing evidence that the child was neglected and dependent; and, 3) the trial court erred in failing to make specific findings of fact in support of the conclusory decision, pursuant R.C.2151.414(E) (sic), that the child cannot be placed with either parent or should not be placed with either parent.
 II. {¶ 11} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio Law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. 2151.413, R.C. 2151.27(C), and R.C. 2151.353(4). In this matter, ACCS only had protective supervision over Katelyn at the time it requested permanent custody. Thus, ACCS elected to file a new complaint alleging new incidents of neglect and dependency.
 {¶ 12} In order to grant permanent custody in its initial disposition, the trial court must determine that permanent custody is in the best interest of the child pursuant to R.C. 2151.414(D), and that the child cannot be placed with either of her parents within a reasonable time for at least one of the reasons enumerated in R.C. 2151.414(E). Here, Mother does not challenge the trial court's finding that it is in Katelyn's best interest to grant permanent custody to ACCS, but asserts that Katelyn could be placed with her within a reasonable time.
 {¶ 13} An award of permanent custody must be supported by clear and convincing evidence. In re Hiatt (1993), 86 Ohio App.3d 716, 725. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Inre Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04.
 {¶ 14} A reviewing court will not reverse an order terminating parental rights if it finds that, upon reviewing the record, that the record contains sufficient evidence to satisfy the clear and convincing standard. In re Baby Girl Doe, 149 Ohio App.3d 717, 738, 2002-Ohio-4470, ¶ 89; In re Wise (1994), 96 Ohio App.3d 619, 626. If there is some competent, credible evidence going to all the essential elements of the case, we will not reverse the trial court's judgment. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74. We will not substitute our judgment for that of the trial court when there is some competent, credible evidence supporting the trial court's findings and decision. Id. Issues regarding the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 III. {¶ 15} Mother's first assignment of error is, in essence, that the trial court erred in finding that ACCS made reasonable efforts to prevent Katelyn's removal from her home and that in finding that ACCS made reasonable efforts to reunify Katelyn with her Mother. R.C. 2151.419(A)(1) provides, in relevant part, that: "* * * at any hearing held pursuant to section * * * 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case removed the child from the home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount." For ease of discussion, we address the efforts to prevent Katelyn's removal from her Mother's home and the efforts to reunify Katelyn with her Mother separately.
 A. {¶ 16} In determining whether the agency made reasonable efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Hughley
(Oct. 26, 2000), Cuyahoga App. No. 77052, citing In the Matter of Tirado
(Jan. 22, 1998), Mahoning App. No. 97 CA 26; In the Matter of DeannaBrewer (Feb. 12, 1996), Belmont App. No. 94-B-28. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. In re Fast (Mar. 25, 1992), Summit App. No. 15282.
 {¶ 17} In support of her proposition that ACCS did not make reasonable efforts to prevent Katelyn's removal from her home, Mother alleges that there was no genuine emergency justifying ACCS's ex parte removal of Katelyn from her home. We note that the trial court did remove Katelyn from Mother's home pursuant to an emergency custody order. After conducting a hearing on the matter, at which Mother was present and represented by counsel, the magistrate issued an order continuing the ex parte emergency custody order. The magistrate specifically found that "probable cause existed to support the prior issuance of the ex parte emergency custody order," and further found "[t]he evidence presented of probable cause to believe that the child/ren's removal or continued removal from the home and placement or continued placement of the child/ren in shelter care is necessary to prevent immediate or threatened physical or emotional harm is as follows: Testimony by ACCS worker."
 {¶ 18} Nowhere in the record does it reflect that Mother filed objections to the magistrate's decision within fourteen (14) days after the filing of that decision, as required by Juv.R. 40(E)(3)(b). That rule specifically provides that: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." The waiver provision of Juv.R. 40(E)(3)(b) "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." Inre Etter (1998), 134 Ohio App.3d 484, 492, citing Goldfuss v. Davidson
(1997), 79 Ohio St.3d 116, 121. Mother does not specifically raise the lack of an emergency that would justify an ex parte removal of Katelyn from her home as an assignment of error. However, she seeks to use this alleged lack of emergency as proof that ACCS failed to make reasonable efforts to prevent Katelyn's removal. Because we find that Mother failed to challenge the grounds for the emergency removal below, she may not make this argument in support of her contention that ACCS failed to make reasonable efforts to prevent Katelyn's removal.
 {¶ 19} As additional support for her argument that ACCS failed to make reasonable efforts to prevent Katelyn's removal from her home, Mother recites a litany of services she claims ACCS should have provided before removing Katelyn from her home. We note the evidence presented at trial clearly demonstrates that ACCS provided substantial services to Mother both prior and subsequent to her reunification with Katelyn. ACCS worked with Mother for over two years in its efforts to reunite her with her daughter, and actually reunited Mother with her daughter in May 2002.
 {¶ 20} Testimony revealed that ACCS provided mental health counseling for Katelyn through Tri-County Mental Health and Counseling, Inc. Although Katelyn only attended four of her bi-weekly sessions after she returned to her Mother's care, on two of those occasions her ACCS caseworker provided Katelyn's transportation. The record also contains evidence that ACCS provided a counseling referral for Mother. However, the semi-annual review of the case plan notes that Mother discontinued her counseling sessions because her attorney reported the sessions were not required by the case plan, and Mother stated that "counseling was not beneficial for her."
 {¶ 21} Rinda Gould, Katelyn's case manager at Tri-County Mental Health, testified that she provided parenting education, behavior modification, nutritional and housekeeping assistance and education to Mother. In addition to the oversight provided by the Tri-County Mental Health case manager, the family had an ACCS case worker who provided case management and planning who had face-to-face contact with Mother eighteen times between May 2002, and September 27, 2002. ACCS also provided Mother with assistance in completing the paperwork and obtaining medical evaluations necessary to apply for Katelyn's Social Security benefits.
 {¶ 22} Based upon the foregoing, the trial court could reasonably conclude that ACCS made sufficient reasonable efforts to prevent Katelyn's removal from Mother's home pursuant to R.C. 2151.419.
 B. {¶ 23} Mother argues that ACCS was required to continue reunification efforts after it filed its complaint for permanent custody, and that it failed to do so. ACCS claims that it had no duty to make efforts to reunify Mother and Katelyn after it filed the complaint for permanent custody. We have previously held that "[t]he trial court can award permanent custody to a children services agency even though little or no efforts are made to return the child to his or her home if the evidence supports a finding that it is in the child's best interest and the child should not be returned to the parents." In re Ward (Aug. 2, 2000), Scioto App. No. 99CA2677, citing In re Scott (Aug. 22, 1997), Marion App. No. 9-97-N, citing In re Kwanza Lee Stevens (July 16, 1993), Montgomery App. No. 13523. Here, ACCS did not have a duty to continue efforts to reunify Mother with Katelyn after it filed its complaint for permanent custody.
 {¶ 24} However, as we noted in Ward, supra, when an agency's effort to obtain custody are based upon an allegation that a child cannot be placed with either parent within a reasonable time due to the fact that the parents have failed to remedy the conditions that originally caused the child's removal, the agency has a duty to exercise reasonable efforts to reunify the parent and child after the child's removal. R.C.2151.414(E)(1). Pursuant to the statute, the agency must exercise "reasonable case planning and diligent efforts * * * to assist the parents to remedy the problems that initially caused the child to be placed outside the home." Id. We have previously held that "when R.C.2151.414(E)(1) is the basis for granting permanent custody as the initial disposition, an agency must have given the parent a case plan and an opportunity to correct the situation that caused the removal." Ward, supra, citing In the Matter of James C., et al. (Aug. 20, 1999), Lucas App. No. L-98-1257.
 {¶ 25} Thus, to the extent that ACCS predicated its complaint for permanent custody upon R.C. 2151.414(E)(1), it had a duty to make reasonable efforts to reunify Katelyn with Mother. As the record reflects there were no efforts to reunite the family after Katelyn's removal October 9, 2002, the trial court erred as a matter of law in the finding related to R.C. 2151.414(E)(1). What was this finding? Did the tc find reasonable efforts or find that none were necessary? I would put it in the first sentence or two after the "B." heading, with language such as "among the several criteria enumerated in R.C. 123 upon which a tc may base its reas. efforts determination, the tc found xyz. Mother asserts that the tc erred in this determination."
Because the trial court found the existence of several other criteria enumerated in R.C. 2151.414(E) as they relate to Mother, and only one of the statutory conditions must exist before a court must find that a child cannot or should not be placed with the parent, the trial court's finding is harmless error.
 {¶ 26} Based upon the foregoing, we find that the trial court reasonably concluded that ACCS did exercise reasonable efforts to prevent Katelyn's removal from Mother's home. We also find that because the trial court predicated its finding that Katelyn could not be returned to either parent within a reasonable time upon several of the factors enumerated in R.C. 2151.414(E) in addition to R.C. 2151.414(E)(1), ACCS did not have a duty to continue its reunification efforts after it filed its complaint for permanent custody. Therefore, the trial court's finding that there were reasonable efforts to reunify is harmless error. Accordingly, we overrule Mother's first assignment of error.
 IV. {¶ 27} In her second assignment of error, Mother contends that the trial court erred in finding there was clear and convincing evidence that Katelyn was a neglected and dependent child. R.C. 2151.03(A) provides, in relevant part, that a "neglected child" includes any child: "1) who is abandoned by the child's parents, guardian, or custodian; 2) who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian; 3) whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being; 4) whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition; * * * 6) who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare."
 {¶ 28} R.C. 2151.04(C) defines a dependent child as a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship." As we have previously noted, "[w]hen a court considers the issue of whether a child is dependent, the focus is not directly upon the conduct of the parent, but upon the child's condition and environment." In the Matter ofBarnhart, Athens App. No. 02CA20, 2002-Ohio-6023, at ¶ 36. R.C.2151.35(A) requires neglect or dependency to be established by clear and convincing evidence. Based upon this standard, the record contains overwhelming evidence to support the trial court's conclusion that Katelyn is a neglected and dependent child.
 {¶ 29} Katelyn's counselor, Cynthia Mitchell, testified that once Katelyn returned to her Mother's care, she attended approximately four of her bi-weekly counseling sessions, the first two sessions with Jill Dorfman, her ACCS caseworker, and the last two with Mother. However, after her July 24, 2002 session, Katelyn did not attend any counseling sessions until October 10th, when she was, once again, in ACCS's care. Ms. Mitchell testified that while Katelyn was in foster care, she made great strides in her counseling sessions, learning to verbalize her feelings instead of flying into a rage.
 {¶ 30} Ms. Mitchell further testified that once Katelyn returned to Mother's home, her progress deteriorated. She was much less verbal. She would not answer the counselor's questions, and would sit in the chair and cover her head with her coat. During her last session while in Mother's custody, the counselor reports Katelyn wore a pull-up and smelled of urine. Ms. Mitchell testified that since Katelyn returned to foster care, she has not missed a scheduled session, and is, once again, more verbal. While in Mother's custody, testimony and evidence revealed Katelyn's behavior was so out of control that her daycare center informed Mother that it could no longer provide for Katelyn's care. Employees of the daycare center testified that they feared for the safety of the younger children in the building when Katelyn flew into her rages.
 {¶ 31} Testimony further revealed that Katelyn's rages occur regardless of where she is living, although they did not occur as frequently, nor were they as severe when Katelyn resided with her foster family. Mother testified that Katelyn does not have any rages when in her care. However, other testimony revealed that the dosage of Katelyn's medications was increased on two separate occasions while she was in Mother's custody. Katelyn's rages, while living with Mother, were so severe that Katelyn's teacher and principal testified they were considering alternative placement for her. They also testified that Katelyn's behavior moderated after she returned to her foster family, such that they were no longer considering alternative placement.
 {¶ 32} In addition to Katelyn's behavioral problems, testimony revealed that the condition of Mother's home was cluttered and unsanitary. Groceries remained on the kitchen floor for days, as did a smashed barbeque sauce packet from a fast food restaurant. Katelyn's Tri-County Mental Health case manager testified that she once observed a used cat litter scoop on the kitchen table just inches away from Katelyn's plate of food. When the case manager mentioned it to Mother, Mother stated that it was not used. When the case manager stated to Mother that there were cat liter crystals on the scoop, Mother said nothing, and cleaned it up. There was also testimony that Mother's home was cluttered, with piles of stuff on the furniture and on the floors such that visitors, and the inhabitants had to step over things to walk through the house. There was cat litter on the floor of the bathroom, and, on one occasion, a used pull-up diaper was left on a desk in Katelyn's bedroom.
 {¶ 33} Testimony at the adjudication hearing also revealed that Katelyn had numerous hygiene issues while in Mother's care. Katelyn had a history of bed wetting every night. While in ACCS custody, Katelyn wore pull-ups to bed every night and washed every morning so that she would not smell of urine. Mother testified that Katie stopped wetting the bed in late June 2002, and ceased to wear pull-ups. However, testimony of numerous other witnesses demonstrated that Katelyn often smelled strongly of urine while in her Mother's care. There was testimony that the smell in Mother's home, be it due to cat litter odor, Katelyn's urine, or a clogged toilet was strong enough at times to gag visitors. In addition to the hygiene problems associated with Katelyn's bedwetting, there was testimony that, while in Mother's custody, Katelyn went to school unbathed, smelling of urine, and wearing the same dirty clothes every day.
 {¶ 34} Katelyn's foster mother testified that Katelyn was so filthy when ACCS removed her from her Mother's care on October 10, 2002, that she took her straight to the bathroom and gave her a bath. Her hair was very greasy and dirty, and the ponytail holders in her hair were filthy. The foster mother further testified that Katelyn's underwear were so dirty that the crotch was black. Katelyn's clothing was so tight that she could hardly button it, and the shoes she wore to her foster home were four sizes too small.
 {¶ 35} Additionally, Katelyn suffered from gingivitis so severe that it caused her gums to bleed when she brushed her teeth. While this condition was under control in foster care, Katelyn's teeth were not brushed properly or regularly when she returned to Mother's home. As a result her gums were, once again, painful and bled each time she brushed her teeth.
 {¶ 36} There was a great deal of testimony regarding Katelyn's need for structure and routine in her life. In fact, upon Katelyn's return to Mother's custody in May 2002, Mother received a written schedule for Katelyn's daily routine. While in Mother's custody, the routine had to be adjusted to accommodate Mother's work schedule, as Mother had to report to work well before Katelyn's scheduled wake time. However, there was testimony that Katelyn's bedtime was not adjusted accordingly, and was even later than that specified on the schedule due, at least in part, to Katelyn's participation in a softball league. The testimony regarding the significant reduction in Katelyn's sleep was further supported by testimony from Katelyn's teacher, who testified that Katelyn was often tired, and irritable when she was living with her Mother, and that it interfered with her ability to learn.
 {¶ 37} During the trial court's in camera interview with Katelyn, the court asked Katelyn what she ate most of the time when she was with Mother. Katelyn replied that she ate ramen noodles and bologna with Mother. She also stated that she ate nice dinners at her aunt Portia's because there was no food for her to eat at her mom's. Later, when the Court asked Katelyn if she felt sad when she was with her Mother, she responded, that she only felt bad when school was going bad because Mother locked her in her bedroom and she did not get to eat.
 {¶ 38} Based upon the foregoing, there was ample competent, credible evidence in the record to support the trial court's conclusion that Katelyn was a neglected and dependent child. Accordingly, we overrule Mother's second assignment of error.
 V. {¶ 39} In her third assignment of error, Mother contends that the trial court erred in failing to make specific findings of fact in support of the "conclusory decision" pursuant to R.C. 2151.414(E), that the child cannot be placed with either parent or should not be placed with either parent within a reasonable time. Mother's argument, however appears to focus on the reasons she feels the various criteria are not applicable to her case. We first address the allegation that the trial court erred in failing to make specific findings of fact as requested by Mother.
 {¶ 40} In its decision, the trial court stated that it had examined the factors outlined in R.C. 2151.414(E)(1), (3), (4), (10), (15), and (16) in determining that Katelyn could not be placed with either parent within a reasonable time and should not be placed with either parent. The trial court then stated its reasons for making that finding, noting "[t]hroughout ACCS's involvement in this family's life, the mother has failed to properly utilize the services and resources made available to her. Likewise she has failed to change her conduct as a parent in a manner that might have made reunification possible." Additionally, the trial court noted "[t]his child is clearly "neglected" as defined in R.C. 2151.03. Her medical, psychological, emotional, and educational needs have not been met by her biological mother. Further, her mother has demonstrated a lack of commitment or unwillingness to provide an adequate permanent home for her. Her father has abandoned her, and the evidence shows that her mother has improperly or inadequately provided reasonable food and nutrition to her. As a result, her mother has failed to prevent neglect of an emotional and medical nature. Additionally, her mother has a history of temporary and unstable relationships with men she has invited into her life."
 {¶ 41} R.C. 2151.414(C) requires that when ordering permanent custody, the juvenile court "upon the request of either party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding." Mother did timely request findings of fact and conclusions of law. However, the trial court, noting pages five through eight of its decision, overruled Mother's motion. We note that the purpose of separately stated findings of fact and conclusions of law is to enable the reviewing court to determine the existence of assigned error. In re Fountain (Feb. 24, 2000), Cuyahoga App. No. 76650, citingDavis v. Wilkerson (1986), 29 Ohio App.3d 100, 101. The Ohio Supreme Court has noted that "Civ.R. 52 expressly provides that an opinion or memorandum of decision entered in an action by a trial court may satisfy its requirements, if it contains findings of fact and conclusions of law `stated separately.'" Stone v. Davis (1981), 66 Ohio St.2d 74, 84. Further, the Ohio Supreme Court has found that a trial court's ruling reciting various facts and a legal conclusion satisfied the requirements of Civ.R. 52, when, together with other parts of the trial court's record, it formed an adequate basis upon which to decide the legal issue presented upon appeal. Stone v. Davis, supra at 85; In re Schoeppner
(1976), 46 Ohio St.2d 21, 23. Here, we find that the trial court's decision, combined with the transcript of the adjudication and disposition hearings, and the transcript of the trial court's in camera interview with Katelyn, form an adequate basis for the trial court's ruling, and for our review.
 {¶ 42} Although it is not artfully drafted, the true thrust of Mother's third assignment of error appears to be that the trial court erred in concluding that R.C. 2151.414(E)(1), (3), (4), (10), (14), (15) and (16) apply to her. We note that pursuant to the plain language of R.C. 2151.414(E), the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" if the court determines by clear and convincing evidence that "one or more" of the factors exist as to each of the child's parents. Accordingly, if there is some competent, credible evidence to support the trial court's finding as to at least one of the factors enumerated in R.C. 2151.414(E), as to each of Katelyn's parents, we must uphold the trial court's decision.
 {¶ 43} The parties do not dispute that Katelyn's Father has abandoned her. Thus, the trial court properly concluded that R.C.2151.414(E)(10) is applicable as to Father.
 {¶ 44} R.C. 2151.414(E)(4) requires a finding that the parent was unwilling to support, visit, or communicate with the child or to provide an adequate permanent home for the child. (Emphasis added.) While Mother may regularly visit with Katelyn, the testimony summarized in section IV, above, regarding the condition of Mother's home, is some competent, credible evidence supporting the trial court's finding that Mother is unwilling to provide an adequate permanent home for Katelyn.
 {¶ 45} The testimony at hearing regarding Katelyn's filthy and poorly fitting clothing is some competent, credible evidence that Mother is unwilling to provide clothing for Katelyn. Katelyn's own testimony during the in camera interview also demonstrates that Mother is unwilling to provide adequate food for her. Testimony clearly demonstrates that Mother failed to provide appropriate care for Katelyn's psychological needs, in that she repeatedly neglected to take Katelyn to her counseling appointments from July 24, 2002 until ACCS removed Katelyn from her home on October 9, 2002. Further, the testimony of Katelyn's counselor and teacher regarding Katelyn's regression during the time that she lived with her Mother constitutes some competent, credible evidence that Mother's failure to take Katelyn to her counseling sessions was detrimental to the child's well being. Therefore the trial court could reasonably conclude that Mother, "for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect," as delineated in R.C.2151.414(E)(14).
 {¶ 46} Mother cites In re William S. (1996), 75 Ohio St.3d 95 for the proposition that the word "unwilling" as used in R.C. 2151.414(E)(14) is not synonymous with "inability." In that case, the Supreme Court noted that the trial court found that the parent was "unable to provide an adequate home for the children," rather than finding the parent was "unwilling to provide and adequate home for the children," as provided in the statute. The Court found that "[s]ince permanent custody is an extreme measure, the specific factor must be established by clear and convincing evidence. While factor eight uses the term "unwilling," it cannot be said that unwilling and unable are synonymous." In re WilliamS., supra at 100. Here, however, the trial court specifically found that Mother "has demonstrated a lack of commitment or unwillingness to provide an adequate home for [Katelyn]." Thus, the trial court has not erroneously based its finding upon an unenumerated factor as the court did in In re William S.[2] Further, we note that Mother did not present any evidence at trial tending to demonstrate that she was "unable" rather than "unwilling" to provide for Katelyn.
 {¶ 47} There is also ample evidence in the record to support the trial court's conclusion that Mother has neglected Katelyn and the seriousness, nature, or likelihood of recurrence makes Katelyn's placement with Mother a threat to the child's safety. Thus, the requirement of R.C. 2151.414(E)(15) is satisfied.
 {¶ 48} As we previously discussed with regard to Mother's first assignment of error, the trial court's finding that R.C. 2151.414(E)(1) is applicable to the facts of this case is problematic in that the record clearly demonstrates that ACCS made absolutely no efforts to reunify Katelyn with her Mother after filing its complaint for permanent custody. Here, because we have found that the record supports the trial court's finding that R.C. 2151.414(E)(4), (14), and (15) apply as to Mother, the trial court's erroneous finding constitutes harmless error.
 {¶ 49} Pursuant to the plain language of the statute, "one or more" of the criteria must exist as to each parent in order for the trial court to make a finding that the child cannot or should not be placed with either parent. We have found that there is some competent, credible evidence in the record to support the trial court's findings that the criteria enumerated in R.C. 2151.414(E)(4), (14), and (15) are satisfied as to Mother, and R.C. 2151.414(E)(10) is satisfied as to Father. Because we have already found that at least one of the criteria enumerated in R.C. 2151.414(E) is met with regard to each of Katelyn's parents, the accuracy of the trial court's findings regarding R.C. 2151.414(E)(3) and (16) is not essential to uphold the trial court's decision. Therefore, we decline to address the application of those factors here. Accordingly, we overrule Mother's third assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] We note that Mother has failed to cause the clerk to transmit the record of Case No. 99300027 to this Court on appeal as required by App.R. 10. However, the absence of such record does not impair our ability to review Mother's assignments of error.
[2] The Tenth District Court of Appeals has noted that the importance of the holding in In re William S. has been greatly diminished due to the fact that R.C. 2151.414(E) has been amended to permit a finding that the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent based upon the existence of "[a]ny other factor the court considers relevant" R.C. 2151.414(E)(16).In re Day (Feb. 15, 2001), Franklin App. No. 00AP-1191.