[Cite as *In re T.H.C.*, 2023-Ohio-1654.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: T.H.C. AND S.H.H.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case Nos. 2022 AP 10 0036 &
2022 AP 10 0037

O P I N I O N

CHARACTER OF PROCEEDINGS:     Appeal from the Tuscarawas County
Court of Common Pleas, Juvenile
Division, Case No. 21 JN 00001

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     May 15, 2023

APPEARANCES:

For Appellee

LISA VITALE ARNOLD
Tuscarawas County Job &
Family Services
389 – 16th Street, S.W.
New Philadelphia, Ohio 44663

For Appellant M.H.P.

NICHOLAS A. DOUGHTY
401 Tuscarawas Street, W., Suite #201
Canton, Ohio 44702

Guardian ad Litem

DONOVAN R. HILL
122 Market Avenue, N.
Canton, Ohio 44702

For Appellee B.H.C.

LISA CALDWELL
203 Fair Ave, N.E.
New Philadelphia, Ohio 44663

*Hoffman, P.J.*

{¶1}   In Tuscarawas App. Nos. 2022 AP 09 0036 and 2022 AP 09 0037, appellant M.H.P. ("Father") appeals the September 3, 2022 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated his parental rights, privileges, and responsibilities with respect to his two minor child ("Child 1" and "Child 2," individually; "the Children", collectively) and granted permanent custody of the Children to appellee Tuscarawas County Job and Family Services ("TCJFS").

STATEMENT OF THE CASE AND FACTS

{¶2}   Father and B.H.C. ("Mother") are the biological parents of the Children.[1] Following a shelter care hearing on January 6, 2021, the trial court issued an emergency order of removal of the Children and placed them in the temporary custody of TCJFS. The following day, January 7, 2021, TCJFS filed a complaint, alleging the Children were neglected and dependent.  The trial court appointed Attorney Donovan Hill as Guardian ad Litem ("GAL").

{¶3}   The complaint set forth the following particulars.  TCJFS has a history with the family.  In October, 2018, the Children were placed in the temporary custody of TCJFS due to concerns about domestic violence between Parents, Mother's untreated mental health issues, Father's alcohol issues, and a cockroach infestation in the home.  The Children were ultimately returned to Mother and Father and the case was closed in September, 2019.  TCJFS was involved with the family again from August, 2020, to October, 2020, due to reported concerns about Mother's ability to care for the Children.

---

[1] Mother is not a party to this Appeal.

During the investigation, TCJFS learned Mother and Father were drinking excessively and a verbal altercation ensued during which Mother stated, in front of the Children, she and the Children were going to die together.  Mother is schizophrenic and spent a few days in a psychiatric hospital to stabilize.  TCJFS received concerns on January 5, 2021, regarding domestic violence and excessive drinking.  Police were called to the home on January 3, 202, after Parents were involved in a physical altercation during which the Children were present.  Father was intoxicated when police arrived.  Mother had bruises on her body.  Father admitted hiding Mother's medication for her schizophrenia.  Further, the home was under investigation due to the cockroach infestation.

{¶4}    Following an adjudicatory hearing on February 4, 2021, the trial court found Child 1 and Child 2 to be neglected and dependent.  The trial court held a dispositional hearing on March 3, 2021, and ordered the Children remain in the temporary custody of TCJFS.  The trial court conducted review hearings on April 19, June 28, and October 4, 2021, and January 4, and March 28, 2022, and maintained the status quo.  On March 24, 2022, TCJFS filed a motion to modify prior disposition to permanent custody.  The GAL filed a final guardian report on August 23, 2022, recommending permanent custody of the Children be granted to TCJFS.

{¶5}    The trial court conducted a hearing on the motion on August 30, 2022.  The following evidence was presented:

{¶6}    Dr. Aimee Thomas, a licensed psychologist with Lighthouse Family Center, completed an assessment of Father.  Father reported the domestic violence incident which led to the removal of the Children occurred because of his drinking and Mother calling the police.  Father indicated he had a high tolerance level to alcohol, and 6 to 8

beers did not impact him.  Dr. Thomas noted Father was difficult to engage and was reluctant to provide information.

{¶7}    Father denied anger management problems, but acknowledged anger issues were the reason he was referred for the evaluation. Father admitted he was inclined to become angry when he drank alcohol. Dr. Thomas diagnosed Father with alcohol dependency, intellectual disabilities, and attachment difficulties.  Dr. Thomas recommended Father participate in drug and alcohol treatment, participate in 12-step meetings, submit to random alcohol screens, participate in parenting skills training, and engage in anger management treatment.  Father scored a 40 on the intelligence test, which indicates he is on the lower extreme of intellectual ability.  Dr. Thomas explained Father functions at the level of a 5-year-old in terms of problem solving.  Dr. Thomas added Father had difficulty learning and applying new information.

{¶8}    Father engaged in counseling through Guidestone.   His last appointment was on November 21, 2021, although he had not been discharged from treatment. Father's counselor attempted to contact him on January 3, January 18, and February 2, 2022.  On February 9, 2022, Father was discharged due to his lack of contact with his counselor.  Father contacted his counselor on March 4, 2022, to re-engage in counseling, but was informed his case was closed and he would need to complete a new intake. Father never followed through with the new intake and did not contact his counselor again.

{¶9}    Jennifer Fire, the supervisor of the Goodwill Parenting Program, testified Father earned a certificate of participation from Goodwill Parenting. Father had perfect attendance, participated with his non-verbal skills, and completed an average amount of participation.  Father engaged in visitation through Goodwill Parenting.  He was present

for 11 of 12 visits.  One of the Children was sick on the day of the 12th visit, but the Children and Father visited by video. Father provided all required meals for the Children and engaged in conversation with the Children during mealtime.  He conversed with the Children about their interests.  He actively engaged in playtime with the Children.  He supervised the Children and was very attentive.

{¶10}  Fire conducted a home visit on December 2, 2021.  The home needed a thorough cleaning, "the floors were exceptionally dirty, very sticky."  Transcript of Permanent Custody Hearing at 33.  Fire found the home infested with cockroaches, and the insects were buried in the trim of the doors and windows.  Fire noted a number of safety concerns including razors and knives within reach of the Children.  Fire did not believe the home was an appropriate place for the Children to reside. However, Parents' current home is clean and appropriate for the Children.

{¶11}  Fire noted Father's weaknesses included difficulty understanding protective capacity and knowing what type of individuals would be safe for the Children to be around. Father was unable to identify appropriate caregivers for the Children.  Parents acknowledged engaging in sexual conduct while the Children were present.  Father continued to drink alcohol during the pendency of the case.  Father completed only one of his three individual goals, and only three of the eight program goals.

{¶12}  Malissa Cantarero, the on-going TCJFS caseworker assigned to the family, testified the instant matter is the second ongoing case with the family.  Cantarero added there have been ten other reports involving the family over the years.  All of those reports included domestic violence and substance abuse.  The Children were removed in 2018, due to concerns of domestic violence, Mother's mental health and the fact she was

unmedicated, and Father's substance abuse. The Children were in foster care from October 2, 2018, until July 14, 2019. Parents completed their case plan services and the case was closed on September 24, 2019.

**{¶13}** Cantarero indicated Father did not complete substance use disorder ("SUD") treatment and recommendations. Father did not commence anger management treatment due to his failure to complete SUD treatment. The two main areas of concern regarding Father were substance abuse and anger management, which Father never addressed.

**{¶14}** On August 19, 2020, TCJFS received a new report of emotional maltreatment and neglect. Mother had been hospitalized, stayed with her sister upon her discharge, then went to a domestic violence shelter. During the investigation, Mother advised TCJFS Father was drinking again, abusing her, and hiding her medication. Services were put into place. The case was eventually closed. The Children were not removed from the home during the pendency of that case.

**{¶15}** With respect to the instant case, Cantarero stated TCJFS received a report on January 5, 2021, indicating Mother and Father were involved in a physical altercation the previous weekend. Father was drunk at the time of the incident. Mother claimed Father was hiding her medication. The Children were present and observed the altercation. During the investigation, Father admitted to drinking, hitting Mother, and hiding Mother's medication. The Children were removed on January 5, 2021, and TCJFS received temporary custody on January 6, 2021.

**{¶16}** Cantarero indicated the Children are doing well in foster care. They have been in the same home since their removal. Cantarero described the Children as caring,

respectful, and well-behaved. They are attached to their foster parents. The Children are doing well in school. Although unhappy TCJFS requested permanent custody, the Children had accepted the decision and recognized such was in their best interest. The Children were acutely aware history would repeat itself.

**{¶17}** Cantarero expressed concerns over the Children being returned to Father's care. Cantarero explained Mother's mental health cannot be remedied, and, even with medication, there are times when Mother is catatonic. Cantarero believed Mother would never be able to care for the Children.

**{¶18}** The GAL, Attorney Donovan Hill, testified he concurred with the concerns raised by Dr. Thomas and Jennifer Fire. The GAL noted he was also the Guardian ad Litem during the 2018 case. The concerns which resulted in the removal of the Children in October, 2018, remained. Neither Mother nor Father had remedied those concerns. The GAL believed it was in the best interest of the Children to grant permanent custody to TCJFS.

**{¶19}** Via Judgment Entry filed September 3, 2022, the trial court terminated Mother and Father's parental rights and granted permanent custody of the Children to TCJFS. The trial court found Mother and Father "failed continually and repeatedly to substantially remedy the conditions causing removal." September 3, 2022 Judgment Entry at 6-7, unpaginated. The trial court further found the Children could not and should not be placed with either Mother or Father within a reasonable time and it was in the Children's best interest to grant permanent custody to TCJFS.

**{¶20}** It is from this judgment entry Father appeals.

**{¶21}** In Tuscarawas App. Nos. 2022 AP 09 0036 and 2022 AP 09 0037, Father raises the following identical assignments of error:

I. THE TRIAL COURT'S FINDING THAT CHILD COULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT'S FINDING THAT TUSCARAWAS COUNTY JOB AND FAMILY SERVICES USED REASONABLE EFFORTS TO PREVENT REMOVAL OF CHILD FROM THE HOME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT'S FINDING THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY A GRANT OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶22}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

TUSC. APP. NO. 2022 AP 09 0036

I, III

TUSC. APP. NO. 2022 AP 09 0037

I, III

**{¶23}** We elect to address Father's first and third assignments of error together.

**{¶24}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶25}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶26}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶27}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶28}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶29}** As set forth in our Statement of the Facts and Case, supra, we find there was sufficient and substantial competent evidence Father failed to remedy the problems which initially caused the removal of the Children from his home. Father was diagnosed with alcohol dependency, intellectual disabilities, and attachment difficulties. Father stopped attending counseling and, although he inquired about re-engaging, he failed to follow through with the necessary intake appointment. Despite a diagnosis of alcohol dependency, Father admitted to drinking throughout the pendency of the case. Father becomes violent when he drinks. Father did not complete SUD treatment and recommendations. Father did not commence anger management treatment due to his failure to complete SUD treatment. The two main areas of concern regarding Father were substance abuse and anger management, which Father never addressed.

**{¶30}** The Children are doing well in foster care. They have been in the same home since their removal. The Children are described as caring, respectful, and well-behaved. They are attached to their foster parents. The Children are doing well in school. The Children were acutely aware history would repeat itself if they are returned to Mother.

**{¶31}** Based upon the foregoing, we find the trial court's finding the Children could not be placed with Father within a reasonable period of time or should not be placed with him is not against the manifest weight of the evidence. We further find the trial court's finding it was in the Children's best interests to grant permanent custody to TCJFS is not against the manifest weight of the evidence.

**{¶32}** Father's first and third assignments of error are overruled.

TUSC. APP. NO. 2022 AP 09 0036

II

TUSC. APP. NO. 2022 AP 09 0037

II

**{¶33}** In his second assignment of errors, Father asserts the trial court's finding TCJFS used reasonable efforts to prevent the removal of the Children from the home was against the manifest weight of the evidence. Specifically, Father submits the trial court's finding TCJFS made reasonable efforts was erroneous as TCJFS failed to include developmental disability services as part of Father's case plan.

**{¶34}** The Ohio Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families

who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3, 2001 Ohio App. LEXIS 4809 (Oct. 30, 2001). To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. *Id.*

**{¶35}** " 'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.' " *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and Wyandot Nos. 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 30. "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16. " 'Reasonable efforts' does not mean all available efforts." *Id.* A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist. 1992).

**{¶36}** As stated, supra, the issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. We find TCJFS's case planning and efforts were reasonable and diligent under the circumstances of this case. The issues which caused the removal of the Children from the home included Father's alcohol abuse and domestic violence between Parents. Father's case plan focused on those issues. Further, because Dr. Thomas did not recommend any developmental

disability services for Father, we can infer she did not believe such services were necessary.

**{¶37}** Accordingly, we find the trial court did not err in concluding TCJFS made reasonable efforts to reunite Father with the Children. We further find no plain error in TCJFS's failure to provide Father with developmental disability services.

**{¶38}** Father's second assignment of error is overruled.

**{¶39}** The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur