[Cite as *In re V.N.*, 2025-Ohio-5111.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: V.N. & L.N. | Case Nos. 2025CA00040 & 2025CA00041 |
| | <u>Opinion and Judgment Entry</u> |
| | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case Nos. 2023JCV00495 & 2023JCV00496 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: November 6, 2025 |

**BEFORE:** William B. Hoffman, Andrew J. King, David M. Gormley, Appellate Judges

**APPEARANCES:** Brandon J. Waltenbaugh and Allison Tuesday, Stark County JFS, for Appellee; Richard D. Hixson, for Appellant; Donovan Hill, Guardian ad Litem.

OPINION

*Hoffman, P.J.*

{¶1}   Appellant J.N. ("Father") appeals the March 28, 2025 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated his parental rights, privileges, and responsibilities with respect to his two minor children ("Child 1" and "Child 2," individually; "the Children," collectively) and granted permanent custody of the Children to appellee Stark County Department of Job and Family Services ("SCJFS" or "the Agency").

STATEMENT OF THE FACTS AND CASE

{¶2}   Father and V.F. ("Mother") are the biological parents of the Children.[1] SCJFS became involved with Mother and the Children in January, 2023, due to concerns regarding Mother's substance abuse, educational neglect, and homelessness.   On February 3, 2023, SCJFS filed complaints, alleging the Children were dependent and/or neglected and requesting a disposition of protective supervision.   SCJFS dismissed the complaints after failing to perfect service within the statutory timeframe.

{¶3}   On May 3, 2023, SCJFS refiled the complaints, again alleging the Children were dependent and/or neglected.   At a shelter care hearing on the same day, the trial court granted the Agency's request for protective supervision.   The trial court conducted a hearing on May 31, 2023, at which the Children's guardian ad litem ("GAL"), Attorney Donovan Hill, requested emergency removal of the Children due to Mother's lack of cooperation.   Via Order filed June 1, 2023, the trial court warned Mother if she "has not

---

[1] Mother is not a party to this appeal.

cooperated with services and contacting the Worker and the Guardian ad Litem, then the Court may remove the children from her custody at the next hearing." June 1, 2023 Order.

{¶4} At the adjudicatory hearing on July 27, 2023, Mother stipulated to a finding of dependency. SCJFS withdrew the allegations of neglect. SCJFS advised the trial court Father's last known address was in Florida. SCJFS spoke with Father who advised he was not involved in the Children's lives and he was unable to provide care and support for the Children at that time. The trial court found the Children to be dependent and immediately proceeded to disposition. The trial court removed the Children from Mother's custody and placed them in the temporary custody of SCJFS.

{¶5} SCJFS moved for an extension of temporary custody on November 22, 2023. Following a hearing on February 13, 2024, the trial court extended temporary custody until August 3, 2024. On May 23, 2024, SCJFS file a second motion for an extension of temporary custody. Following a hearing on July 31, 2024, the trial court extended custody until February 3, 2025.

{¶6} On January 2, 2025, SCJFS filed a motion for permanent custody. The trial court conducted a hearing on the motion on February 25, 2025.

{¶7} Keyaira Cherry, the SCJFS ongoing worker assigned to the family, testified Father was living in Panama City, Florida, at the time of the filing of the complaints. Cherry reviewed the timeline of the case and the reasons SCJFS became involved. Specifically, Cherry stated the original concerns centered on Mother's substance abuse, educational neglect, and homelessness. Cherry detailed Mother's case plan requirements and noted Mother failed to successfully complete her case plan services. During a meeting on October 1, 2024, Cherry advised Mother SCJFS was planning a visit

between the Children and Father. Mother became upset, left the meeting, did not complete her scheduled drug screen, and did not attend subsequent visits with the Children. Cherry had no further contact with Mother after October 1, 2024, despite the Agency's attempt to do so. Cherry indicated Father did not have any case plan requirements.

{¶8} When SCJFS initially advised Father about the Agency's involvement, Father advised SCJFS he was not in a place to care for the Children. However, in July or August, 2024, Father informed SCJFS he was interested and able to care for the Children. SCJFS requested Florida complete an Interstate Compact on the Placement of Children ("ICPC") assessment of Father's home. Florida approved Father's home although the caseworker mentioned the house was not the cleanest. In November, 2024, the Children visited Father in Florida. On the day the Children were scheduled to return to Ohio, Father failed to have them at the airport at the designated time and they missed their flight. The Children stayed an additional two days with Father in order for SCJFS to secure a return flight for them. Father mentioned the extra days were financially difficult as he had to find food for the Children and he did not have the money. When the Children returned, they disclosed Father's home was infested with roaches and they felt uncomfortable during the visit.

{¶9} Cherry testified the Children's November visit was the only visit they had with Father during the pendency of the case. Father had not seen the Children since they were two and three years old. The Children were in their teens when SCJFS became involved with the family. Father had no contact with the Children until he learned of the Agency's involvement. Father blamed Mother for his lack of contact, noting Mother

frequently changed her phone number, repeatedly moved, and had periods of homelessness.

{¶10} Cherry also testified during the best interest portion of the hearing. The Children did not have any developmental or medical issues. The Children were engaged in counseling. Initially, SCJFS had concerns about Child 1's mental health and self-harm, but Child 1 was doing well. The Children were working with an independent living worker. The Children had been in the same foster placement since they were removed from Mother's home. Although the foster parents did not wish to adopt the Children, they were willing to have the Children remain with them until the Children are ready to be out on their own. Cherry stated the Children had a minimal bond with Father and they were not interested in pursuing a relationship with Father. Cherry opined permanent custody was in the best interest of the Children.

{¶11} The GAL filed his final report on February 19, 2025, and testified at the hearing. The GAL recommended granting permanent custody of the Children to SCJFS. In his written report, the GAL stated, "[the Children] remain steadfast they do not wish to be placed in [Father's] custody or have visits with him as he is essentially a stranger." Final Report of Guardian ad Litem at p. 2, unpaginated.

{¶12} Via Judgment Entry filed March 28, 2025, the trial court terminated Mother and Father's parental rights, privileges, and responsibilities and granted permanent custody of the Children to SCJFS. The trial court found the Children could not be placed with Father within a reasonable time and should not be placed with him; Father had abandoned the Children; and the Children had been in the temporary custody of SCJFS for twelve or more months of a consecutive twenty-two month period.

**{¶13}** It is from this judgment entry Father appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN FINDING THAT FATHER ABANDONED THE MINOR CHILDREN, AS SUCH FINDING WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

II. THE TRIAL COURT ERRED IN DETERMINING THAT THE AGENCY MADE REASONABLE EFFORTS.

**{¶14}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶15}** In his first assignment of error, Father maintains the trial court erred in finding he abandoned the Children as such finding was not supported by clear and convincing evidence.

**{¶16}** When considering a manifest weight of the evidence challenge, as an appellate court, our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck Equipment Co. v. Jeffries*, 1982 WL 2911 (5th Dist. Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279 (1978).

{¶17} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

{¶18} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶19} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶20} The trial court found Father had abandoned the Children; the Children had been in the temporary custody of SCJFS for twelve or more months of a consecutive

twenty-two month period; and the Children could not be placed with Father within a reasonable time and the Children should not be placed with him. Father only challenges the trial court's finding he abandoned the Children. "The five first-prong factors enumerated in R.C. 2151.414(B)(1)(a)-(e) are alternative findings; accordingly, [an agency] must only prove one of those grounds in order to satisfy the first-prong requirement of the permanent custody test." (Citations omitted.) *In re J.B.*, 2018-Ohio-244, ¶ 9 (9th Dist.).

**{¶21}** As set forth in our Statement of the Case and Facts, supra, Father had not seen the Children since they were two and three years old. The Children were in their teens when SCJFS became involved with the family. Father had no contact with the Children until he learned of SCJFS's involvement. Initially, Father informed SCJFS he was unable to provide for the Children. Over a year later, Father informed the Agency he was interested in having the Children live with him. Father only saw the Children on one occasion during the pendency of the matter.

**{¶22}** Based upon the foregoing and a review of the entire record, we find the trial court's finding Father abandoned the Children was supported by clear and convincing evidence. We further find the record also supports the trial court's finding the Children had been in the temporary custody of SCJFS for twelve or more months of a consecutive twenty-two month period. SCJFS refiled the complaint on May 3, 2023. The Children remained with Mother until July 27, 2023, when the trial court placed them in the temporary custody of SCJFS. The Agency filed its motion for permanent custody on January 2, 2025. The Children were in the temporary custody of SCJFS for approximately eighteen months at the time of the permanent custody hearing. A trial court's 12 of 22

finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 2008-Ohio-5458, ¶ 45 (5th Dist.).  In addition, we find the record supports the trial court's finding the Children could not be placed with Father within a reasonable time nor should the Children be placed with him.  Father was a virtual stranger to the Children. After the Children visited Father in November, 2024, the Children indicated they did not want further contact with him.  The Children's opinions made it clear to the trial court the Children should not be placed with Father.

**{¶23}**  Father does not challenge the trial court's finding it was in the best interest of the Children to be placed in the permanent custody of SCJFS.  Nonetheless, we find the trial court made the requisite considerations of the best interest factors under R.C. 2151.414(D) and the record supports the trial court's determination.

**{¶24}**  Father's first assignment of error is overruled.

II

**{¶25}**  In his second assignment of error, Father argues the trial court erred in finding SCJFS made reasonable efforts to reunify him with the Children.

**{¶26}**  The Ohio Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." (Citation omitted.) *In re Z.G.A.A.,* 2024-Ohio-326, ¶ 48 (5th Dist.). To that, case plans establish individualized concerns and goals, along with the steps the parties and the agency can take to achieve reunification. (Citation omitted.) *Id.*

**{¶27}** What constitutes "reasonable efforts" requires consideration of the nature of a case plan and varies with the circumstances. *In re S.M.*, 2015-Ohio-2318, ¶ 31 (12th Dist.). "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 2003-Ohio-5262, ¶ 16 (4th Dist.). " 'Reasonable efforts' does not mean all available efforts." *Id.* A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63 (12th Dist. 1992).

**{¶28}** When SCJFS initially became involved with the family in 2023, the ongoing caseworker contacted Father, who advised the caseworker he was unable to provide for the Children. Over a year later, ongoing caseworker Cherry spoke to Father to inquire whether his status had changed in regard to his housing and financial situation. Father informed SCJFS he was interested in having the Children live with him. SCJFS requested an ICPC from Florida, which approved Father's home. Thereafter, SCJFS arranged for the Children to visit Father in Florida. SCJFS paid for the Children's airline tickets as well as additional expenses which resulted from Father's inability to get the Children to the airport on time for their return flight. Following the visit, the Children consistently stated they did not want to live with Father or have any contact with him. The foster parents have encouraged the Children to speak with Father when he calls, but the Children have no interest in doing so at this time.

**{¶29}** As stated, supra, the issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. We find SCJFS's case planning and efforts were reasonable and diligent under the circumstances of this case.

**{¶30}** Father's second assignment of error is overruled.

**{¶31}** The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs waived.


By: Hoffman, P.J.

King, J. and

Gormley, J. concur