[Cite as *In re L.S.*, 2022-Ohio-3811.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN RE:

L.S.

JUDGES:
Hon. Earle E. Wise, Jr., P.J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2022 CA 00054

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2021 DEP 00107 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 26, 2022 |


APPEARANCES:

For Plaintiff-Appellee

SARAH E. EXTEN
RCCS
731 Scholl Road
Mansfield, Ohio 44907

For Defendant-Appellant

JAMES L. BLUNT II
3954 Industrial Parkway Drive
Shelby, Ohio 44875

*Wise, John, J.*

{¶1} Appellant J.S. appeals the decision of the Richland County Court of Common Pleas, Juvenile Division, which terminated Appellant's parental rights and granted Richland County Children's Services Agency's ("Agency") motion for permanent custody of their child, L.S. The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2} L.S. was born on October 10, 2020. Appellant is the natural father of L.S. K.H. is the biological mother of L.S.

{¶3} On October 14, 2020, L.S. was placed with relatives under a safety plan due to being born positive for fentanyl and going through withdrawal. K.H. was dealing with addiction to controlled substances, mental health problems, substance abuse, and lifestyle issues. Appellant was dealing with substance abuse, lifestyle issues, and child welfare issues.

{¶4} On June 2, 2021, L.S. was placed in emergency shelter care with the Agency due to injuries suffered by L.S.'s sibling while under the care of the safety plan.

{¶5} On July 28, 2021, L.S. was found to be a dependent child and placed into the temporary custody of the Agency. In the Judgment Entry granting temporary custody, a case plan was adopted and approved addressing concerns of K.H.'s substance abuse, mental health, and lifestyle concerns.

{¶6} On January 5, 2022, the Agency filed a motion terminating all residual parental rights of K.H. and J.S., and granting permanent custody to the Agency.

{¶7} On April 7, 2022, the trial court held a hearing on the motion.

{¶8} At the hearing, Alissa Brokaw, the director at the Mansfield Y Center childcare testified L.S., about eight months old, would arrive in dirty clothes, in a dirty car seat, and was not clean. L.S. was not as far along developmentally for eight months. He was not sitting up or pulling himself up. He just laid around.

{¶9} After the children were placed in foster care, Ms. Brokaw saw an almost immediate change. L.S. and his siblings were cleaner. L.S. began developing, started walking and was able to control his body more. She believes it is in the best interest of L.S. to remain with the foster family.

{¶10} Todd Curtis then testified he is a therapist and clinical supervisor at Catalyst. He was responsible for reviewing K.H.'s records. This included two withdrawal management sessions and one session for the creation of an Individual Service Plan. There were no other records showing K.H. participated in the ISP.

{¶11} K.F. then testified that she is the foster parent of L.S. and his siblings. She has been the foster parent of L.S. since June of 2021. K.F. testified when the children were placed with her, they were scared, constantly upset, and had developmental delays. Since being placed with K.F. those issues have been resolved. L.S. and his sister are in physical therapy to help with their motor skills. They are back to where they need to be and will be released from the program soon.

{¶12} K.F. believes the children have progressed to where they should be under her care. They have bonded as a family. L.S. refers to K.F. and her husband as "ma" and "dad." K.F. said that she is prepared to adopt L.S. and his siblings if they are placed in the permanent custody of the Agency. K.F. believes it is in the best interest of the children to be placed with her. Appellee has never attempted to visit L.S. while under her care.

{¶13} Next, K.H. testified that she is the mother of L.S. and his siblings. She has been involved with children's services since October of 2020. She developed a case plan. As part of the case plan she was required to complete mental health treatment, which she failed to do. She was required to completed drug abuse treatment, which she failed to do. She has not visited her children in over four months. She is still using illicit substances, particularly heroin. She has resided with I.R. in the past, one of L.S.'s sibling's father. He has been domestically violent toward K.H. in the past. She has left and gone back to him several times. She agreed it is not in the children's best interest to be around domestic violence.

{¶14} Next, I.R., father of L.S.'s sister, testified. He has not visited his daughter in the last 90 days and was recently released from incarceration. After release, he made no attempt to visit his daughter.

{¶15} Amanda Campbell testified she is the Children Services caseworker assigned to L.S.'s case. She became involved when L.S. was born addicted to fentanyl. At this time K.H. was entered into a case plan which entailed mental health treatment, substance abuse treatment, and provision of basic needs for L.S. and his siblings.

{¶16} Ms. Campbell continued that K.H. and A.R., father of one of L.S.'s siblings, have had very minimal involvement in their case plan. K.H. completed detox once but never reported back to start services. A.R. was sporadic with his treatment and was eventually terminated because of prolonged absence from treatment. Both consistently tested positive for controlled substances throughout their treatment. These consisted of positive tests for cocaine, fentanyl, heroin, amphetamines, methamphetamines, and oxycodone.

**{¶17}** For each meeting, Appellant was notified and invited to participate via letter and attempted to contact via phone. Appellant attended one meeting then never returned or contacted Children Services. While attempting to contact Appellant, Ms. Campbell spoke with Appellant's mother. Appellant's mother did not know his whereabouts, confirmed Appellant continues to relapse into drug abuse after periods of treatment, and that he would not be an appropriate caregiver, given his history. Appellant has a separate case open in Summit County involving another child born within weeks of L.S. Appellant has never visited L.S.

**{¶18}** Ms. Campbell testified L.S. has a strong bond with his foster family. Upon arriving, L.S. was developmentally delayed and needed to wear a helmet to reshape his head. His previous caregivers would not put him in the helmet. He attended a few sessions of therapy when arriving in foster care, and he progressed very well. The therapists did not believe he needed to attend anymore. His foster parents started using the helmet again, and he is coming along well.

**{¶19}** Ms. Campbell testified to reports that I.R. and Appellant committed acts of domestic violence against K.H., that I.R. continues to abuse K.H., and that Appellant was recently kicked out of his girlfriend's apartment for domestic abuse.

**{¶20}** Next, Sandi Freeman testified she is the Guardian ad Litem for L.S. and his siblings. Upon becoming involved with the children's case, she said it was obvious they were already developmentally delayed.

**{¶21}** Ms. Freeman met Appellant after he called into a court hearing. She went to his apartment to see if it was a good placement for L.S. Initially he was very open but became hesitant when they began questioning him. During the interview he gave a series

of dishonest answers about living with his girlfriend leading Ms. Freeman to conclude it would not be a good place for L.S. to be placed.

{¶22} Throughout the children's placement with the foster family, Ms. Freeman observed progress made by the children to overcome their developmental delays. The foster parents are actively involved with the children and meet all their basic needs. Ms. Freeman believes it would be in the best interest of L.S. to be placed in the permanent custody of Children Services for the purpose of adoption.

{¶23} On April 21, 2022, the Magistrate issued a decision finding it is in the best interest of L.S. to be placed in the permanent custody of Children's service.

{¶24} Above the objections of Appellant, the trial court adopted the Magistrate's Decision.

{¶25} Thereafter, Appellant timely filed his notice of appeal. He raises the following two Assignment of Error.

## ASSIGNMENTS OF ERROR

{¶26} "I. WHETHER THE TRIAL COURT ERRED BY DENYING THE CONTINUANCE OF TRIAL.

{¶27} II. WHETHER RICHLAND COUNTY CHILDREN SERVICES ENGAGED REASONABLE EFFORTS TO REUNITE THE CHILDREN WITH A PARENT."

## I.

{¶28} In his first Assignment of Error, Appellant argues the trial court erred by denying Appellant's request for a continuance. We disagree.

{¶29} Juv.R. 23 provides: "Continuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter

entrusted to the broad, sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). In order to find an abuse of discretion, we must determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶30}** In reviewing a trial court's denial of a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to witnesses, opposing counsel, and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and other relevant factors, depending on the unique facts of each case. *Unger* at 67, 423 N.E.2d 1078.

**{¶31}** We have carefully examined the record in this case and conclude that the trial court lawfully exercised its discretion in refusing to grant the continuance. Most notably, Appellant had been previously offered transportation prior to the hearing and did not avail himself of it. Appellant failed to set up his own transportation, and Appellant has never appeared before the trial court in person. Appellant contacted the trial court just before the hearing to inquire if he was even required to be there. Appellant had counsel present on his behalf to cross-examine witnesses. The request was made the day of trial. L.S.'s mother, L.S.'s foster mother, all the witnesses, the Guardian ad Litem, the caseworker, two other parents of L.S.'s siblings, and attorneys had already arrived at the courthouse.

**{¶32}** For all the foregoing reasons we find the trial court did not abuse its discretion in refusing to grant Appellant's request for a continuance.

**{¶33}** Appellant's first Assignment of Error is overruled.

**II.**

**{¶34}** In his second Assignment of Error, Appellant argues the trial court erred in engaging in reasonable efforts to reunite the family pursuant to R.C. §2151.419. We disagree.

**{¶35}** Juv.R. 40(D)(3)(b)(iv) states:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

**{¶36}** Appellant's counsel failed to object to the trial court's finding that the Agency made reasonable efforts to reunite Appellant with L.S. As a result of the failure to object to the reasonable efforts finding, Appellant has waived all but plain error. "[T]he plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *In the Matter of A.J.S.*, 2nd Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶16, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus (1997).

**{¶37}** R.C. §2151.419 imposes a duty upon the Agency to make reasonable efforts to reunite parents with their children where the Agency removed the children from the home.

**{¶38}** " 'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.'" *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and Wyandot Nos. 16-12-16, 2013-Ohio-4317, ¶95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶30. "In determining whether the agency made reasonable efforts [pursuant to R.C. §2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶16. " 'Reasonable efforts' does not mean all available efforts.' " *Id*. A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist.1992).

**{¶39}** Appellant argues that the caseworker should have kept in better contact with Appellant and should have done more to provide transportation for Appellant. Appellant does not address any service that was provided to Appellant and how this falls short of reasonable effort. Again, reasonable efforts test does not include "whether the agency could have done more[.]" *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶16. As such, Appellant has failed to show that the trial court committed plain error.

**{¶40}** Appellant's second Assignment of Error is overruled.

**{¶41}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Richland County, Ohio, is hereby affirmed.

By: Wise, John, J.

Wise, Earle, P. J., and

Gwin, J., concur.

JWW/br 1021