[Cite as *In re C.T.*, 2024-Ohio-330.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| C.T. (D.O.B. 11/12/15) | : | Hon. Craig R. Baldwin, J. |
| C.T. (D.O.B. 8/29/18) | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | |
| | : | Case Nos. 2023CA00123 |
| | : | 2023CA00124 |
| | : | |
| | : | O P I N I O N |
| | : | |

CHARACTER OF PROCEEDING: Appeal from the Court of Common Pleas, Family Court Division, Case Nos. 2022 JCV 00707 & 2022 JCV 00708

JUDGMENT: Affirmed

DATE OF JUDGMENT: January 31, 2024

APPEARANCES:

For Appellant Father

RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, OH 43701

For Mother

KATHALEEN O'BRIEN
116 Cleveland Avenue NW, Suite 303
Canton, OH 44702

For Appellee Agency

BRANDON J. WALTENBAUGH
402 2nd Street SE
Canton, OH 44702

Guardian ad Litem

TODD KOTLER
4580 Stephen Circle NW, Suite 100
Canton, OH 44718

*King, J.*

{¶ 1}   Appellant father, C.T., appeals the August 23, 2023 judgment entries of the Court of Common Pleas of Stark County, Ohio, Family Court Division, terminating his parental rights and granting permanent custody of his children to appellee agency, Stark County Department of Job and Family Services ("SCDJFS").  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 29, 2022, SCDJFS filed complaints alleging two children, C.T. born November 2015 and C.T. born August 2018, to be dependent and/or neglected.  Father of the children is appellant herein; mother is S.M.  A shelter care hearing was held on June 30, 2022, and the children were placed in the temporary custody of SCDJFS.

{¶ 3}   On July 27, 2022, both father and mother stipulated to dependency.  By decisions filed same date, the trial court found the children to be dependent and continued the children's temporary custody with SCDJFS.  The trial court approved and adopted the case plans.

{¶ 4}   On May 17, 2023, SCDJFS filed motions for permanent custody of the children.  A hearing was held before the trial court on August 21, 2023.  By judgment entries filed August 23, 2023, the trial court terminated all parental rights and granted permanent custody of the children to SCDJFS.  Findings of fact and conclusions of law were filed contemporaneously with the judgment entries.

{¶ 5}   Father filed appeals and assigned the following errors in each case:

I

{¶ 6}   "THE TRIAL COURT ERRED IN FINDING THE CHILDREN SHOULD NOT AND COULD NOT BE PLACED WITH FATHER WITHIN A REASONABLE TIME AND FAILING TO GRANT AN EXTENSION OF TEMPORARY CUSTODY AS A RESULT."

II

{¶ 7}   "THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN, AS SUCH A FINDING WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶ 8}   "THE TRIAL COURT ERRED IN DETERMINING THAT STARK COUNTY JOB AND FAMILY SERVICES MADE REASONABLE AND DILIGENT EFFORTS."

IV

{¶ 9}   "THE TRIAL COURT APPLIED AN IMPROPER STANDARD WHEN IT DETERMINED A FINDING THAT THE CHILDREN SHOULD NOT AND COULD NOT BE PLACED WITH FATHER WITHIN A REASONABLE TIME WAS MANDATORY PURSUANT TO R.C. 2151.414(E)(1)."

{¶ 10} Mother filed her own appeals and is not a part of this opinion.[1]  For ease of discussion, we will address father's assignments of error out of order.

III

{¶ 11} In his third assignment of error, father claims the trial court erred in finding SCDJFS made reasonable and diligent efforts to reunite the family.  We disagree.

---

[1]Appellate Case Nos. 2023CA00118 and 2023CA00119.

{¶ 12} A public children services agency must make reasonable efforts "to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(A)(1). It is the agency's burden to prove that it has made those reasonable efforts. *Id.* "Reasonable efforts" is not statutorily defined, but has been construed to mean "that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification." *In re A.J.,* 6th Dist. Lucas No. L-10-1038, 2010-Ohio-4206, ¶ 37. "In determining whether the agency made reasonable efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶ 16. As stated by our colleagues from the Third District in *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3 (Oct. 30, 2001):

> Case plans are the tool that child protective service agencies use to facilitate the reunification of families who, for whatever reason, be it abuse, neglect or otherwise, have been temporarily separated. Case plans establish individual goals, concerns and the steps that the parent and agency will take in order to achieve reunification. R.C. 2151.412 establishes the guidelines for case plans and according to R.C. 2151.412(E)(1) all parties to the plan are bound by the terms of the journalized case plan.

{¶ 13} As held by the Supreme Court of Ohio in *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 42-43:

> To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody.

> Therefore, we hold that R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.

{¶ 14} SCDJFS filed a case plan for the parents on July 27, 2022. Concerns for father were his substance abuse and he was around children as a registered sex offender. The plan called for father to complete substance use and risk assessments, follow all

recommendations including treatment and/or counseling if needed, comply with the SCDJFS's drug screening color code system, remain clean for four to six months to receive additional referrals, and obtain and maintain stable employment and housing. Father was to receive diagnostic services, case management services, and counseling services. He was to visit his children under supervision. His progress was to be reviewed at monthly home visits, family team meetings, and case reviews and semi-annual reviews. A case plan review on December 29, 2022 changed his risk assessment to a parenting practices assessment and follow all recommendations. An annual review was held on May 26, 2023; father had made insufficient progress.

{¶ 15} The trial court found SCDJFS was making reasonable efforts on June 30, July 29, and December 29, 2022, and May 26, 2023.

{¶ 16} We find SCDJFS established its case planning and efforts were reasonable and diligent prior to the hearing on the motion for permanent custody.

{¶ 17} Assignment of Error III is denied.

IV

{¶ 18} In his fourth assignment of error, father claims the trial court applied an improper standard in finding the children could not be placed with him within a reasonable time or should not be placed with him under R.C. 2151.414(E)(1). We disagree.

{¶ 19} R.C. 2151.414(E) lists several factors for a trial court to consider by clear and convincing evidence in its determination whether a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The first factor is found in subsection (E)(1) and states in part:

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, *the parent has failed continuously and repeatedly to substantially remedy the conditions* causing the child to be placed outside the child's home. (Emphasis added.)

{¶ 20} The trial court found clear and convincing evidence that father "has failed to remedy the conditions" that caused the children to be placed. Judgment Entry filed August 23, 2023. Father argues the trial court failed to make a finding using the emphasized language of the statute. He argues while he has not remedied the conditions, he was making progress and did not fail "continuously and repeatedly." Appellant's Brief at 24.

{¶ 21} We agree the trial court did not use the language as cited in the statute and we encourage the trial court to do so. But the trial court also found father did not have appropriate housing under R.C. 2151.414(E)(4) ("The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child"). Father did not permit the caseworker to visit his home and he admitted to the caseworker that the home was not appropriate for the children. T. at 28. SCDJFS tried to help father obtain suitable housing but after a year, he had made no progress on housing. *Id.*

{¶ 22} The trial court made an additional finding under R.C. 2151.414(E) in support of its conclusion that the children could not be placed with father within a reasonable time or should not be placed with father; father did not contest this finding. Any one of the findings under subsection (E) is sufficient for the trial court to determine the children cannot be placed with father within a reasonable time or should not be placed with father.

{¶ 23} Upon review, we find the trial court met the requirements of R.C. 2151.414(E).

{¶ 24} Assignment of Error IV is denied.

I, II

{¶ 25} In his first assignment of error, father claims the trial court erred in finding the children could not be placed with him within a reasonable time and should not be placed with him and abused its discretion in failing to grant an extension of temporary custody as a result.

{¶ 26} In his second assignment of error, father claims the trial court's finding that permanent custody was in the best interests of the children was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

{¶ 27} We disagree with both assignments of error.

{¶ 28} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d

172, 175, 485 N.E.2d 717 (1st Dist.1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.)

{¶ 29} In weighing the evidence however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 30} R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 31} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 32} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(16) Any other factor the court considers relevant.

{¶ 33} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 34} During the hearing, the trial court heard from the ongoing family caseworker and father's psychological evaluator, Stephen Dean, Ph.D. The guardian ad litem submitted reports. As explained by our brethren from the Second District in *In re A.J.S. & R.S.,* 2d Dist. Miami No. 2007CA2, 2007-Ohio-3433, ¶ 22:

Accordingly, issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. In this regard, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Finally, an appellate court must adhere to every reasonable presumption in favor of the trial court's judgment and findings of fact. *In re Brodbeck,* 97 Ohio App.3d 652, 659, 647 N.E.2d 240, citing

*Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 1994-Ohio-432, 638 N.E.2d 533.

{¶ 35} Further, " 'the discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' " *In re Mauzy Children,* 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073, *2 (Nov. 13, 2000), quoting *In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

{¶ 36} The caseworker testified SCDJFS first became involved with mother in November 2021. T. at 9-10. Concerns with father's substance use arose in April 2022. T. at 12. Based upon SCDJFS's concerns, the children were placed in the agency's temporary custody on June 30, 2022. Both father and mother stipulated to dependency on July 27, 2022. Case plans were approved and adopted.

{¶ 37} As stated above, initial concerns for father were his substance abuse and he was around children as a registered sex offender. The plan called for father to complete substance use and risk assessments (later changed to a parenting practices assessment), follow all recommendations including treatment and/or counseling if needed, comply with the SCDJFS's drug screening color code system, remain clean for four to six months to receive additional referrals, and obtain and maintain stable employment and housing. Father was to receive diagnostic services, case management services, and counseling services.

{¶ 38} Father argues he "consistently tested negative for substances, completed the parenting assessment but did not have adequate time to follow through with the recommendations of that assessment, and maintain[ed] steady employment since December of 2022 so that he could obtain appropriate and independent housing." Appellant's Brief at 12-13. He argues he was making progress and should have been granted more time.

{¶ 39} The caseworker testified father did not complete a substance use assessment even though the agency gave father places to call for assessments and tried to have him set up appointments.[2] T. at 25. Because he failed to obtain the assessment, he did not engage in any treatment and was not recommended for any parenting classes. T. at 25, 29-30. The caseworker admitted father consistently tested negative for drug use for five months, but tested positive for Suboxone in June 2023. T. at 26. The caseworker was concerned because she could not "assume that he would maintain sobriety." T. at 26, 32. Father did complete the parenting assessment, although late to complete any recommended services. T. at 26-27, 33. He was employed at Kentucky Fried Chicken since December 2022. T. at 31. As stated above, father did not permit the caseworker to visit his home and admitted the home was not appropriate for the children. T. at 28. SCDJFS tried to help father obtain suitable housing but after a year, he had made no progress on housing. *Id.* Father arrived late for his supervised visitations with the children. T. at 29. He engaged in rough play with the older child and fought with mother

---

[2]Joint Exhibit 1 indicates father obtained a substance use assessment dated June 5, 2023, after the filing of the motion for permanent custody; the assessment noted he did not have a problem and was stable. This joint exhibit was added to the record after the hearing but before the trial court's determination. The caseworker explained once the decision to file for permanent custody is made, services stop. T. at 33-34.

in front of the children.  *Id.*   The caseworker opined father did not make significant progress on the case plan.  T. at 30.  She did not believe a four-month extension would help given the lack of progress at the time of the hearing.  T. at 31.

{¶ 40} Dr. Dean testified he conducted a psychological assessment on father, administered testing, and had four sessions with father.   T. at 44-45.   Dr. Dean recommended a substance use assessment.  T. at 46.  Although he did not recommend that father needed to do a mental health evaluation, he opined father lacked the ability "to kind of fulfill the normal responsibilities of life."   T. at 47.   Father indicated he was depressed and struggled with anxiety.   T. at 46-47.   Dr. Dean diagnosed father with unspecified anxiety disorder and testified father exhibited "paranoid anti-social personality traits."  T. at 49.   Testing indicated father would need support in parenting.   T. at 47. Father looked to outside factors or people to blame for his problems therefore it was less likely he would change.   T. at 48-49.   Dr. Dean recommended a drug and alcohol assessment, a parenting education class, individual weekly therapy "to begin seeing himself as being the source of his problems and doing something about it," and obtain adequate housing.  T. at 49-50; Dean Report, SCDJFS Exhibit 1.

{¶ 41} The guardian ad litem filed a report recommending permanent custody to SCDJFS.  Guardian ad Litem's Interim Report filed October 25, 2023.  At the conclusion of the hearing, the guardian ad litem stated he would stand by his report, but he was "ambivalent, given the fact that there has been a four-month gap between the time that the services were recommended, with respect to Father."  T. at 72.  But the guardian noted father was not proactive with the agency and did not have adequate housing.  T. at 72-73.

{¶ 42} Under R.C. 2151.415(D), a trial may extend temporary custody for up to six months "if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension." In this case, four months of the six-month extension period remained. T. at 31.

{¶ 43} In its August 23, 2023 judgment entries, the trial court found notwithstanding reasonable case planning and SCDJFS's diligent efforts, father "has failed to remedy the conditions" that caused the children to be placed. The children could not "be placed with either parent at this time or within a reasonable period of time" and "should not be placed with either parent." The trial court made extensive findings of fact relative to the factors under R.C. 2151.414. August 23, 2023 Findings of Fact and Conclusions at 7-12. The trial court noted father's psychological testing indicated he would need support and guidance to adequately parent and struggles to take responsibility for his behavior; he has a criminal history involving sexual battery, assault, battery, and driving under the influence. The trial court also noted father has refused a home visit and his home was not adequate for the children. Father has not made significant progress on his case plan and if an extension were granted, there was not enough time to engage and complete services.

{¶ 44} Based upon the cited testimony, we find there was clear and convincing evidence to support the trial court's findings that the children could not be placed with

father within a reasonable time and should not be placed with father; the trial court did not abuse its discretion in denying an extension.

{¶ 45} During the best interest portion of the hearing, the caseworker testified the children had several different placements due to the older child exhibiting some troubling behaviors with other children. T. at 59-62. The two children were currently in different places. T. at 62. The younger child is doing very well and is bonded to everyone in the home. *Id.* The family is interested in adoption. *Id.* The older child is doing okay and the agency would like to discuss placing that child back with the younger child to keep them together. T. at 63. The caseworker opined the benefit of permanent custody would outweigh any negatives because of the parents' lack of significant progress on the case plans. T. at 63-64. She believed permanent custody was in the best interest of the children. *Id.*

{¶ 46} As for best interests, the trial court made findings and determined "the harm caused by severing any bond with the parent is outweighed by the benefits of permanence" and the children deserve to be "in a stable, loving environment." August 23, 2023 Findings of Fact and Conclusions of Law.

{¶ 47} Based upon the testimony presented, we find clear and convincing evidence to support the trial court's decisions. We do not find the trial court lost its way in making the decisions to terminate father's parental rights and grant permanent custody of the children to SCDJFS; we do not find any manifest miscarriage of justice.

{¶ 48} Assignments of Error I and II are denied.

{¶ 49} The judgments of the Court of Common Pleas of Stark County, Ohio, Family Court Division, are hereby affirmed.

By King, J.

Delaney, P.J. and

Baldwin, J. concur.